[987 NE2d 272, 964 NYS2d 495]

The People of the State of New York, Respondent, v Keith A. Adams, Appellant.

Argued February 13, 2013; decided March 28, 2013

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*David R. Juergens* of counsel), for appellant. I. The mandatory legal relationship between the prosecutor (the Monroe County District Attorney) and the complainant (a sitting Rochester City Court Judge) created a per se conflict of interest (the appearance of impropriety itself), and the motion court erred by refusing to grant defendant's request for a special prosecutor. (*Matter of Schumer v Holtzman*, 60 NY2d 46; *Berger v United States*, 295 US 78; *Matter of Curry v Hosley*, 86 NY2d 470; *People v Zimmer*, 51 NY2d 390; *People v Fielding*, 158 NY 542; *People v Di Falco*, 44 NY2d 482; *People v Baker*, 99 AD2d 656; *People v Shinkle*, 51 NY2d 417; *People v Schrager*, 74 Misc 2d 833; *Matter of Brostoff v Berkman*, 79 NY2d 938.) II. Based upon the wishes of the complainant (a sitting Rochester City Court Judge), the Monroe County District Attorney refused to offer defendant a plea to a reduced charge. This conduct caused actual prejudice to defendant arising from a demonstrated conflict of interest, and the motion court erred by denying his request for a special prosecutor. (*Weatherford v Bursey*, 429 US 545; *People v Urbaez*, 10 NY3d 773; *People v Dietze*, 75 NY2d 47; *People v Shack*, 86 NY2d 529; *People v Duran*, 25 Misc 3d 1210[A], 2009 NY Slip Op 52020[U]; *People v Seaberg*, 74 NY2d 1; *People v Selikoff*, 35 NY2d 227; *Matter of Sedore v Epstein*, 56 AD3d 60; *Kinberg v Kinberg*, 48 AD3d 387; *People v Robinson*, 27 Misc 3d 635.) III. The motion court erred when it denied defendant's request for the appointment of a special prosecutor without conducting any hearing on his assertion that the prosecutor was improperly treating him more severely than similarly-situated defendants. (*People v Gruden*, 42 NY2d 214; *People v Cahill*, 2 NY3d 14; *People v Eboli*, 34 NY2d 281; *People v Cruz*, 55 AD2d 921.)

*Sandra Doorley, District Attorney*, Rochester (*Kelly Wolford* and *Leslie E. Swift* of counsel), for respondent. There should be another affirmance because defendant was properly refused a special prosecutor as correctly found by County Court on appeal. (*People v Keeton*, 74 NY2d 903; *People v Gray*, 86 NY2d 10; *People v Thomas*, 50 NY2d 467; *People v Baumann & Sons Buses, Inc.*, 6 NY3d 404; *People v Michael*, 48 NY2d 1; *People v Martin*, 50 NY2d 1029; *People v Carncross*, 14 NY3d 319; *Matter of Holtzman v Goldman*, 71 NY2d 564; *People v Gilmour*, 98 NY2d 126; *Matter of Johnson v Pataki*, 91 NY2d 214.)

### OPINION OF THE COURT

Pigott, J.

On September 20, 2009, complainant, a sitting Rochester City Court Judge, accused defendant, her neighbor and ex-paramour, of committing a crime by sending her three offensive text messages by cell phone earlier that day. The messages were vulgar and personal in nature, and unrelated to complainant's judicial duties. Defendant was charged, by way of an information/complaint filed in Rochester City Court, with two misdemeanor counts of aggravated harassment in the second degree (Penal Law § 240.30 [1] [a], [b]). All the Rochester City Court Judges recused themselves from the case. A Monroe County Court Judge presided over the arraignment.

Almost two months elapsed, and no plea bargain could be reached. At this point, at defense counsel's request, the case returned to Rochester City Court, where a visiting judge from a neighboring county was assigned, without objection, to preside over pretrial hearings in City Court. The parties remained at an impasse, despite numerous efforts by defense counsel to reach a plea deal.

In January 2010, the Public Defender filed an omnibus motion including a request that the Monroe County District Attorney be disqualified "on the grounds of actual prejudice and the existence of a conflict of interest" and that a special prosecutor be appointed. The motion also requested the assignment of new defense counsel, on the basis of the conflicting duties of the Public Defender to cross-examine complainant vigorously and to represent indigent clients seeking favorable treatment from her in City Court.

City Court granted the request for the assignment of new defense counsel; the Public Defender's office was relieved and an attorney from a neighboring county was assigned to represent

defendant. However, defendant's motion to disqualify the Monroe County District Attorney's office and for appointment of a special prosecutor, pursuant to County Law § 701 (1), was denied, without prejudice to the filing of such a motion in County Court.

The new defense counsel spoke with the District Attorney's office regarding a possible settlement of the case, in which defendant would plead guilty to harassment in the second degree, a violation, in return for a sentence that would include 40 hours' community service and psychiatric treatment. As defense counsel later recalled their conversation, the prosecutor told him that, while in most cases this would be an adequate resolution, he was rejecting the offer "due to the position of the victim." Defense counsel then spoke with complainant herself, who told him that she was "not willing to reduce the charges" and "wanted to go to trial." No plea offers were extended to defendant.

In February 2010, defendant renewed his disqualification motion, in County Court, alleging prejudice and the appearance of impropriety. Defendant contended "that the District Attorney's office is in a conflict of interest position; to wit: By giving undue weight to the wishes of the victim in screening their case, the District Attorney's office is no longer acting as a fair and impartial official."

Counsel recounted the communications he had had with the District Attorney's office in which the prosecutor stated, in essence, that complainant was unwilling to accept a reduced charge. In an accompanying affidavit, defendant's original counsel from the Public Defender's office stated that, in his view, the District Attorney's office was treating complainant's wishes much differently than it would any other victim's. The original defense counsel pointed out that the District Attorney's office, like his own office, appears before the complainant judge frequently each day and "would prefer not to engender any hostility from her." He opined that the District Attorney's office was

> "forced to be an advocate for her, . . . beyond what they would normally do were she not a judge . . . In any other case, the District Attorney's Office would have offered an ACD or violation with an Order of Protection. However, the ADA assigned to this matter has said that after speaking with the complainant,

they would make no offer. In my twelve years of experience handling criminal cases in this county, I have never seen a similarly situated defendant receive no offer of an ACD or Violation. The District Attorney's office clearly feels constrained in how they can handle this matter due to the position of the complainant."

In response, though generally denying the allegation that defendant was being singled out for harsh treatment, the District Attorney's office did not specifically rebut the allegation that it consistently offered to accept pleas to a reduced charge in comparable cases. Nor did it offer an example of any other circumstance when it had refused to offer a plea to a violation or agree to dispose of the case by ACD in a comparable misdemeanor case.

County Court denied defendant's motion for the appointment of a special prosecutor. The case returned to City Court, where the visiting judge tried once more to facilitate a plea settlement. These efforts were unsuccessful and the case proceeded to a jury trial in City Court. Defendant was convicted of one count of aggravated harassment in the second degree. City Court sentenced defendant to time served and a one-year conditional discharge; an order of protection was filed.

Defendant appealed to County Court, which affirmed the judgment of conviction. A Judge of this Court granted defendant leave to appeal and we now reverse.

"The courts, as a general rule, should remove a public prosecutor *only* to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence" (*Matter of Schumer v Holtzman*, 60 NY2d 46, 55 [1983] [emphasis added]). The latter phrase refers to the "opportunity for abuse of confidences entrusted to [an] attorney" (*People v Shinkle*, 51 NY2d 417, 420 [1980], cited in *Schumer*). In general, "[t]he objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored" (*Schumer*, 60 NY2d at 55).

However, in rare situations, the appearance of impropriety itself is a ground for disqualification, as our case law recognizes, when the appearance is such as to "discourage[ ] public confidence in our government and the system of law to which it is dedicated" (*People v Zimmer*, 51 NY2d 390, 396 [1980]). In a case of that nature, "[d]efendant[s], and indeed the public at large, are entitled to protection against the appearance of

impropriety" (*Shinkle*, 51 NY2d at 421). We are persuaded by the unique circumstances that this is such a case.

Although no constitutional right to a plea bargain exists (*see Lafler v Cooper*, 566 US —, —, 132 S Ct 1376, 1395 [2012]), an appearance of impropriety may arise when the record provides an objective basis to question whether the prosecutor is exercising pretrial prosecutorial discretion in an evenhanded manner, based on the merits of the case or other legitimate prosecutorial concerns. Here, while we do not find that any actual impropriety occurred, there is an unacceptably great appearance of impropriety—the appearance that the District Attorney's office refused to accept a reduced charge because the complainant was a sitting judge who demanded that the matter go to trial, rather than because a trial was, in its own disinterested judgment, appropriate.

The complainant was a City Court Judge who had the authority to preside over cases involving this District Attorney's office, and the criminal charges were unrelated to her official position, so that her status as a judge should not have been a factor in the resolution of the case. Nor was there anything unique or unusual about the charges, since they involved communications between two people who had formerly been in an intimate relationship—a scenario frequently seen in harassment cases. However, despite protracted and repeated plea negotiations, the District Attorney's office did not offer defendant a reduced charge or agree to a plea that included a favorable sentence, such as an ACD, community service, or the like. While this alone would not be enough to raise an appearance of impropriety, there are other aspects of the record that do. Defendant's original counsel from the Public Defender's office, who had represented defendants in cases involving this District Attorney's office for more than a decade, averred that he had never before seen the office take such a hard-line position in a case involving comparable charges and a similar defendant. Although provided ample opportunity to respond, the District Attorney's office replied with nothing more than conclusory denials, failing to rebut the allegations with even a single example of a comparable case it had similarly refused to resolve with an ACD or a plea to a violation. Because the District Attorney's office failed to take steps to dispel the appearance of inappropriate disparate treatment, we conclude that this is one of those rare cases in which a significant appearance of impropriety was created, requiring disqualification.

Accordingly, the order of County Court should be reversed and the case remitted to Rochester City Court for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur.

Order reversed and case remitted to Rochester City Court for further proceedings in accordance with the opinion herein.