OPINION OF THE COURT
Joseph A. Zayas, J.
Defendant, charged with burglary and related offenses, moves for the disqualification of the District Attorney and the appointment of a special prosecutor on the ground that (a) the complainant is the uncle of an Assistant District Attorney (ADA); (b) the prosecuting ADA indicated that he would not offer a plea to a misdemeanor “because of the complainant in this case”; and (c) the prosecuting ADA consulted with the complainant regarding a possible disposition. Defendant’s motion, opposed by the People, requires this court to determine whether “actual prejudice” or the “appearance of impropriety” arises, particularly in light of the Court of Appeals recent decision in People v Adams (20 NY3d 608 [2013]), when a prosecuting attorney considers the views of an alleged victim of a violent felony offense during the plea bargaining process where that alleged victim also happens to be a family member of an ADA in the same office.
Because New York law requires the District Attorney’s office to “consult” with victims of violent felony offenses regarding possible plea dispositions (Executive Law § 642 [1]), and because defendant has otherwise failed to demonstrate actual prejudice or the appearance of impropriety, the court finds that disqualification and the appointment of a special prosecutor is not warranted under the circumstances of this case. Accordingly, defendant’s motion is denied in its entirety.[1]
Background
Defendant is charged with burglary in the second degree (Penal Law § 140.25 [2]), a violent felony offense {see Penal Law § 70.02 [1] [b]), and other related charges for allegedly breaking into and removing certain property (including a laptop computer) from the complainant’s home without having either the permission or authority to do so. On September 28, 2013, defendant was arraigned on the felony complaint in Criminal *920 Court at which time the People read into the record a notice informing defendant that the “complainant is the uncle of an employee of the Queens County District Attorney’s Office.” The notice also invited defense counsel “to give counsel’s position on the need for a Special District Attorney under County Law § 701 to the Chief Assistant District Attorney.”
The People also served defendant with a preprinted form, endorsed with defendant’s name, entitled “Notice,” setting forth the District Attorney’s waiver and plea policy:
“Defendants who wish to plead guilty to felony charges post indictment are required to plead guilty to the top count of the indictment pending against them. The Queens County District Attorney’s Office does not engage in post-indictment plea bargaining. “Defendants wishing to engage in pre-indictment dispositional conferencing are required at the time of their arraignment in Criminal Court to waive any and all constitutional rights to speedy trial as well as all statutory rights under Sections 30.30, 180.80 and 190.80 of the Criminal Procedure Law for a period of thirty (30) days” (emphasis added).
After being fully apprised of the District Attorney’s plea policy, defendant chose not to waive her rights and was subsequently indicted for second-degree burglary, petit larceny and fifth-degree criminal possession of stolen property.
Defendant later filed a motion pursuant to County Law § 701[2] to “disqualify” Richard A. Brown, District Attorney of Queens County, and his assistants from prosecuting her case on the *921 grounds of “actual prejudice” and the “existence of a conflict of interest,” and sought the appointment of a special prosecutor. Defendant contends that at the end of a pretrial suppression hearing, in which another justice of this court “suppressed the most damaging evidence against defendant,” [3]counsel sought to resolve the case with a plea to a misdemeanor, along with a non-incarceratory sentence. Defendant maintains that at some point during the sidebar conference, the prosecutor, in response to the hearing court’s suggestion that the People offer defendant a misdemeanor plea, said in sum and substance, “I cannot do that because of the complainant in this case.” Defendant contends that the prosecutor’s statement at sidebar, as well as the fact that “[t]he People have been in contact with the family member-employee[4] concerning this case, specifically concerning what, if any disposition will be made in this case,” demonstrates a conflict, which, she contends, is prejudicial, and that in the absence of this conflict, the case “would have and should have been resolved.”
The People oppose disqualification and the appointment of a special prosecutor and argue that defendant’s representations regarding the prosecutor’s sidebar statement were “incomplete and taken out of context.” The People also maintain that their unwillingness to offer defendant a misdemeanor plea was based not on an alleged conflict, but rather on the belief that they continue to “have a viable case despite the partial suppression granted by the court.” That viability, they argue, is based, in part, on a witness who they expect will testify that the perpetrator, who matched defendant’s description, was seen leaving the crime scene at the time of the burglary.[5] The prosecutor also intends to introduce at trial certain “recorded inculpatory phone conversations between the defendant and her boyfriend,” which *922 were previously provided to defense counsel. The People contend that when they described the “additional evidence” in the case to the hearing court, “the court revised its opinion of the strength of the People’s case.”
The People also argue that their refusal to engage in post-indictment plea bargaining is based on the District Attorney’s long-standing plea and waiver policy, which expressly precludes post-indictment plea negotiations, and which was served upon defendant and defense counsel at defendant’s Criminal Court arraignment.[6]
Discussion
It is well settled that “courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest” (People v Adams, 20 NY3d 608, 612 [2013], quoting Mutter of Schumer v Holtzman, 60 NY2d 46, 55 [1983]). Accordingly, “[t]he objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored” (id.). Furthermore, that the victim or defendant may be related to a non-prosecuting ADA in the District Attorney’s office is not sufficient, standing alone, to satisfy the defendant’s burden to show actual prejudice (see People v Johnson, 20 AD3d 808 [3d Dept 2005] [recusal of District Attorney not warranted even though the victim was the cousin of a staff member from the District Attorney’s office]; *923 Matter of Morgenthau v Crane, 113 AD2d 20, 23 [1st Dept 1985] [trial court erred in disqualifying the District Attorney’s office inasmuch as defendant had failed to demonstrate actual prejudice arising from the fact that his cousin is a prosecutor in that office]).
That said, “in rare situations, the appearance of impropriety itself is a ground for disqualification” (Adams at 612; cf. People v Vanderpool, 217 AD2d 716, 718 [3d Dept 1995] [defendant’s motion for the appointment of a special prosecutor on the grounds that the prosecuting attorney represented defendant as a defense attorney on a different matter 10 years prior, as well as represented members of defendant’s family, was properly denied inasmuch as defendant did not offer proof of prejudice and “the inference of impropriety” was not, by itself, sufficient to grant the defendant the relief that she sought]). Indeed, although there is “no constitutional right to a plea bargain . . . an appearance of impropriety may arise when the record provides an objective basis to question whether the prosecutor is exercising pretrial prosecutorial discretion in an evenhanded manner, based on the merits of the case or other legitimate prosecutorial concerns” (Adams at 613).
In Adams, the Court of Appeals held that the District Attorney’s refusal to permit defendant to plead guilty to a reduced charge because the complainant, a sitting judge who presided over cases involving that District Attorney’s office, insisted that the matter go to trial, demonstrated an “unacceptably great appearance of impropriety” (id.). Defendant’s motion for disqualification in Adams included an affidavit from one of the defendant’s former attorneys in which the attorney asserted: (1) “that, in his view, the District Attorney’s office was treating complainant’s wishes much differently than it would any other victim’s” (id. at 611); and (2) that in his decade-long experience in defense work, he had never seen the District Attorney’s office take “such a hard-line position in a case involving comparable charges and a similar defendant” (id. at 613). Inasmuch as the prosecution failed to “dispel the appearance of inappropriate disparate treatment,” the Court found that the case represented one of the “rare” instances in which the appearance of impropriety was implicated and disqualification was necessary (id.).
Significantly, although the District Attorney’s office in Adams “den[ied] the allegation” that it had “singled out” defendant “for harsh treatment” (id. at 612), the People failed to “rebut the allegations with even a single example of a comparable case *924 it had similarly refused to resolve” (id. at 613). The People in Adams also failed to offer an “example” of a case “when it had refused to offer a plea to a violation or agree to dispose of the case by ACD in a comparable misdemeanor case” (id. at 612).
Here, defendant has failed to demonstrate the existence of “actual prejudice” or the “appearance of impropriety,” sufficient to warrant the disqualification of the District Attorney and the appointment of a special prosecutor. Accordingly, the motion is denied in all respects.
First, the District Attorney’s written, uniform policy prohibiting post-indictment plea bargaining, notice of which was served upon defendant at her Criminal Court arraignment, undercuts defendant’s bald assertion that she was treated in an unfair manner because the complainant was related to another ADA. Indeed, that long-standing policy alone rebuts the claim of actual prejudice and the appearance of impropriety, inasmuch as the prosecutor’s refusal to offer the indicted defendant a misdemeanor plea is consistent with the policy’s express mandate and demonstrates the “evenhanded manner” (Adams at 613) in which the plea policy is administered in Queens County (see American Bar Association, ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-3.1 [d] [3d ed 1999] [“Similarly situated defendants should be afforded equal plea agreement opportunities”]). For this reason, there is no merit to defendant’s claim that in the absence of this imagined conflict, the case “would have and should have been resolved.”
To the contrary, it is somewhat rare in this county for a post-indictment case, in which the People maintain that there is strong evidence against defendant, to be resolved prior to trial with anything other than a top count plea (much less a plea to a misdemeanor), particularly where the defendant, like defendant here, is charged with a violent felony offense. And, in this burglary case, the People maintain that the evidence against defendant is viable despite a partial suppression ruling and the fact that the eyewitness did not make a positive identification during the police-arranged identification procedure. Indeed, the People contend that the eyewitness’ testimony, along with certain inculpatory phone conversations between defendant and her boyfriend, is sufficient to establish guilt beyond a reasonable doubt.
Second, defendant’s reliance upon the Court of Appeals decision in Adams is misplaced. In Adams, the Court ruled that the prosecutor’s refusal to permit defendant to plead guilty to a *925 lesser charge because the complainant, a sitting judge, opposed it, was one of the “rare” instances where the appearance of impropriety mandated disqualification. By accepting the complainant’s intractable position, the prosecutor essentially stymied plea negotiations in what should have been a run-of-the-mill harassment case, which, according to a defense attorney from the Public Defender’s office, would normally have been resolved with an adjournment in contemplation of a dismissal or a plea to a violation.
Here, by contrast, the District Attorney’s uniform plea policy “dispel[s] the appearance of inappropriate disparate treatment” (Adams at 613) and demonstrates that defendant was treated the same way other similarly situated defendants, who are in a post-indictment posture, are treated. The District Attorney’s long-standing policy also establishes that the People’s refusal to offer defendant a plea to a misdemeanor is not part of an aberrant “hard-line position” (id.), but rather is consistent with the way in which the People deal with defendants (like defendant in this case) who have been indicted for violent felony offenses. Furthermore, unlike the People in Adams who failed to rebut the allegation of unfair treatment, the People here convincingly rebutted defendant’s unfounded claim with an extant office-wide policy. Consequently, unlike Adams, this case is not one of the “rare cases” where the appearance of impropriety mandates the disqualification of the District Attorney and the appointment of a special prosecutor.
Third, defendant has also failed to establish actual prejudice or the appearance of impropriety by merely relying on the fact that the complainant is the uncle of an ADA, inasmuch as there is no per se rule requiring disqualification on the grounds of familial kinship (see People v Johnson, 20 AD3d 808 [2005]; Matter of Morgenthau v Crane, 113 AD2d 20, 23 [1985]), especially where, as here, the District Attorney’s office employs hundreds of people. There was, of course, no claim, based upon specific factual allegations, asserted by defendant that the People had reached out to the ADA relative, or anyone else other than the complainant, regarding a plea disposition in this case. Nor is there any claim or evidence that the ADA relative has influenced the prosecution in this case in any way.
Finally, defendant’s speculative claim that actual prejudice or the appearance of impropriety arose when the prosecutor refused to offer defendant a plea to a reduced charge “because of the complainant,” is also without merit. Significantly, even *926 assuming that the prosecuting ADA said that he could not offer a reduced plea “because of the complainant in the case,” that statement alone is somewhat ambiguous and does not lead inexorably to the conclusion that the prosecuting ADA meant that a reduced plea was unavailable because the complainant is the uncle of another ADA. There is no claim, of course, that the prosecuting ADA said that. Defense counsel is simply speculating that that is what the prosecuting ADA actually meant. Yet, the prosecuting ADA contests that claim, explaining that his statement was “taken out of context” by defense counsel, and complaining that defense counsel’s representation of the sidebar discussion was “incomplete.”
In any event, defendant complains not only about the prosecuting ADA’s indication that he could not offer a reduced plea “because of the complainant” but also complains that the prosecuting ADA consulted with the complainant regarding a possible disposition. Yet, there is nothing at all improper with the People’s consultation with the complainant, or with the People’s consideration of the complainant’s views, regarding a possible plea disposition, inasmuch as such consideration is specifically permitted under New York law. Executive Law § 642 (1) provides, in pertinent part, that “[t]he victim of a violent felony offense . . . shall ... be consulted by the district attorney in order to obtain the views of the victim regarding disposition of the criminal case by . . . plea of guilty.”[7] Under these circumstances, the Executive Law’s foregoing mandate, together with the District Attorney’s uniform plea policy, promotes, rather than undermines, “public confidence in our government and the system of law to which it is dedicated” (People v Zimmer, 51 NY2d 390, 396 [1980]).
Indeed, Executive Law § 642 (1) specifically mandates that which defendant is challenging—namely, that a prosecutor should make every effort to consult with the victim of a violent *927 felony offense, such as the victim in this case, when the prosecutor is seeking to reach a disposition by plea. Inherent in this mandate is the understanding that victims of violent felony offenses have certain “participatory rights” regarding the disposition of a criminal case (see American Bar Association, Criminal Justice Section, Victims Committee, The Victim in the Criminal Justice System, available at http://apps.americanbar.org/dch/ thedl.cfm?filename = /CR300000/newsletterpubs/ victimsreport.pdf [accessed Nov. 26, 2014]). This statutory requirement is virtually identical to the “black letter” standards adopted by the American Bar Association, which fully embrace the requirement that the People apprise themselves of a victim’s attitudes as it relates to a plea bargain {see American Bar Association, ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-1.1 [b] [3d ed 1999] [“appropriate consideration should be given to the . . . interests of the victims and the interest of the public in the effective administration of justice”]; 14-3.1 [e] [“(t)he prosecuting attorney should make every effort to remain advised of the attitudes and sentiments of victims . . . before reaching a plea agreement”]).[8]
Historically, victims were responsible for initiating criminal prosecutions (see The Victim in the Criminal Justice System at 5). That changed in the early nineteenth century with the rise of the “public prosecutor,” who became solely responsible for “initiating the criminal case” (id.). Presently, the public prosecutor has a solemn role in the criminal justice system (see generally People v Zimmer, 51 NY2d 390 [1980]). Although the prosecutor’s “paramount obligation is to the public, he [or she] must never lose sight of the fact that a defendant, as an integral member of the body politic, is entitled to a full measure of fairness” (id. at 393). It is for this reason that the prosecutor’s “mission is not so much to convict as it is to achieve a just result” (id.). Toward this end, prosecutors are imbued with “flexibility” and “discretion,” which they are expected to exercise at every phase of the prosecution, including plea discussions (id. at 394).
Indeed, the prosecutor is viewed as “a vital partner” who “heavily influences the sanction meted out” during the plea bargaining process (id.). And, although the prosecutor is given *928 wide latitude during the largely private, off-the-record discussions leading up to a negotiated plea, the prosecuting attorney is bound by certain standards, such as those enacted in Executive Law § 642.
Moreover, this court, under the Rules of the Chief Administrator of the Courts, is also duty bound to “consider the views of victims” of a “violent felony offense” regarding a plea (see 22 NYCRR 129.3 [b]; see also Executive Law § 645 [“The chief administrator of the courts . . . shall promulgate standards for the treatment of the innocent victims of crime by the unified court system. These standards shall conform to and be consistent with the regulations promulgated pursuant to section six hundred forty of this article”]). Thus, in light of this explicit statutory authority, the court finds that there is nothing improper in the People’s consideration of the complainant’s wishes in this particular case.
The court, however, is in no way suggesting that an alleged victim’s views should usurp the time-honored discretion and flexibility that the prosecutor is expected to exercise during the plea bargaining process (The Victim in the Criminal Justice System at 6 [“The right to consult does not mean that victims have a right to direct the prosecution”]). To the extent that defendant argues that the prosecutor’s statement at sidebar indicates that the complainant was somehow controlling the prosecution because of his familial relationship to an ADA in the District Attorney’s office, defendant has failed to allege a single fact demonstrating that the complainant’s views transcended the prosecutor’s “own disinterested judgment” in this case (Adams at 613).
In short, defendant has failed to demonstrate actual prejudice or the appearance of impropriety arising from the fact that the complainant is the uncle of an ADA. Accordingly, for the reasons stated above, defendant’s motion to disqualify the District Attorney and appoint a special prosecutor is denied in all respects.

. The court previously issued a short order denying the motion on October 9, 2014.

. County Law § 701, in pertinent part, provides:
“Whenever the district attorney of any county and such assistants as he or she may have . . . are disqualified from acting in a particular case to discharge his or her duties at a term of any court, a superior criminal court in the county wherein the action is triable may, by order . . .
“appoint some attorney at law having an office in or residing in the county ... to act as special district attorney during the . . . disqualification of the district attorney and such assistants as he or she may have ....
“No appointment . . . shall be for a period beyond the adjournment of the term at which made. Where, however, an appointment is required under this section for a particular case because of the disqualification of the district attorney, the appointment may be made for all purposes, including disposition. The special district attorney so appointed shall possess the powers and discharge the duties of the district attorney during the period for *921 which he or she shall be appointed.” (County Law § 701 [1] [a]; [4].)

. The hearing court suppressed property (a laptop computer) found in defendant’s room, as well as a statement defendant made at the precinct but denied suppression of defendant’s statement that she did not know anything about the burglary.

. Although the phrase “family member-employee” is somewhat ambiguous, the court reads it to be a reference to the family member (complainant) of the employee who works in the District Attorney’s office.

. The People, pursuant to their obligations under Brady v Maryland (373 US 83 [1963]), disclosed the fact that the eyewitness did not make a positive identification during the police arranged identification procedure. When the witness viewed the photo array, he stated that the individual he observed outside the complainant’s apartment could have been either number two or *922 four, with number two being defendant, and number four being someone else. According to the eyewitness, he made his observations from a distance.

. Although the People also argued that the motion was improperly filed in the Trial Assignment Part (TAP-A), that objection has been effectively mooted because defendant’s motion has been referred to this court by the Deputy Chief Administrative Judge. Indeed, this court has jurisdiction to decide this motion under the Administrative Rules of the Unified Court System and Uniform Rules of the Trial Courts (as newly amended on July 2, 2014), which provide the following:
“Any party filing with a superior court an application for appointment of a special district attorney, pursuant to section 701 of the County Law, shall make the application to the Chief Administrator of the Courts or to an appropriate Deputy Chief Administrative Judge. The Chief Administrator, Deputy Chief Administrative Judge, or appropriate Administrative Judge shall assign a superior court judge to consider the application as provided by law, selected from a list of judges established for that purpose that has been approved by the Chief Administrator and the Presiding Justice of the appropriate Appellate Division” (see 22 NYCRR 200.15).
This court is on the “list of judges” designated to consider motions for the appointment of a special prosecutor (id.).

. The New York State Office of Victim Services has incorporated the language of Executive Law § 642 in its declaration of “The Rights of Crime Victims in New York State,” as it pertains to victims’ rights during judicial proceedings (see Office of Victim Services, Help for Crime Victims, http:// ovs.ny.gov/files/OVS_Rights_of_CV_booklet.pdf [accessed Nov. 26, 2014]). The spirit of this law is similar to the spirit of the laws in approximately 33 other states which provide a “general statutory declaration of victims’ rights,” as well as those states that have “added a victims’ rights amendment to their state constitutions” (see Charles Doyle, Crime Victims’ Rights Act: A Summary and Legal Analysis of 18 U.S.C. 3771 at 2, Congressional Research Service [Apr. 24, 2012], available at http://www.fas.org/sgp/crs/misc/RL33679.pdf [accessed Nov. 26, 2014]).

. The federal government has also adopted a statutory bill of rights for crime victims which provides, in part, “[t]he right [of the victim] to be reasonably heard at any public proceeding in the district court involving . . . plea” (18 USC § 3771 [a] [4]).