People v Drago (2022 NY Slip Op 04561)

People v Drago

2022 NY Slip Op 04561

Decided on July 13, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 13, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
ROBERT J. MILLER
PAUL WOOTEN
LARA J. GENOVESI, JJ.

2021-01971
 (Ind. No. 2201/18)

[*1]The People of the State of New York, respondent,
v
Annmarie Drago, appellant.

Laurette D. Mulry, Riverhead, NY (Felice B. Milani of counsel), for appellant. 
Raymond A. Tierney, District Attorney, Riverhead, NY (Glenn Green and Elena Tomaro of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Fernando Camacho, J.), rendered March 4, 2021, convicting her of criminally negligent homicide, criminal mischief in the fourth degree, and petit larceny, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements she made to law enforcement officials.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.
The defendant was charged by indictment with criminally negligent homicide, criminal mischief in the fourth degree, and petit larceny. The charge of criminally negligent homicide arose from an incident in which the defendant, while operating her motor vehicle, struck Evelyn Rodriguez, who had been standing next to the defendant's vehicle, thereby causing Rodriguez's death. The remaining charges were related to the defendant's conduct of removing and damaging certain personal property placed by Rodriguez and her partner, Freddy Cuevas, on the sidewalk outside a residence owned by the defendant's mother. The items were part of a memorial to Rodriguez's and Cuevas's daughter, Kayla, who had been murdered two years earlier and whose body had been discovered on the defendant's mother's property.
After a jury trial, the defendant was convicted of all charges, and sentence was imposed. The defendant appeals from the judgment.
The County Court did not improvidently exercise its discretion in denying the defendant's motion to disqualify the District Attorney and to appoint a special prosecutor. "A court may intervene to disqualify an attorney only under limited circumstances," particularly, "in the case of a District Attorney who is a constitutional officer chosen by the electorate and whose removal by a court implicates separation of powers considerations" (Matter of Schumer v Holtzman, 60 NY2d 46, 54-55). "The courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence" (id. at 55; see People v Adams, 20 NY3d 608, 612). "[I]n rare situations, the appearance of impropriety itself is a ground for disqualification, . . . when the appearance is such [*2]as to 'discourage[ ] public confidence in our government and the system of law to which it is dedicated'" (People v Adams, 20 NY3d at 612, quoting People v Zimmer, 51 NY2d 390, 396). Here, the defendant failed to demonstrate "actual prejudice or so substantial a risk thereof as could not be ignored" (People v Adams, 20 NY3d at 612), or an appearance of impropriety warranting disqualification, arising from the existence of a professional relationship between Rodriguez and the District Attorney (see People v Wynn, 248 AD2d 494; see also Matter of Soares v Herrick, 20 NY3d 139, 146-147).
Contrary to the defendant's contention, the County Court did not err in denying her application for preindictment discovery. The defendant contends that while such discovery was not required under CPL former article 240, which was in effect at the time of her application, she was nevertheless entitled to such discovery as a matter of constitutional due process. To the contrary, however, "[d]iscovery which is unavailable pursuant to statute may not be ordered based on principles of due process because 'there is no general constitutional right to discovery in criminal cases'" (Matter of Pirro v LaCava, 230 AD2d 909, 910, quoting Matter of Miller v Schwartz, 72 NY2d 869, 870; see People v Denham, 97 AD3d 691, 692).
The defendant's contention regarding the manner in which the grand jury proceeding was conducted is not subject to review on this direct appeal because it involves matter dehors the record (see People v Petion, 186 AD3d 1410, 1411).
The defendant's contention that her statements made to a police officer at the scene of the incident should have been suppressed because they were not preceded by Miranda warnings (see Miranda v Arizona, 384 US 436) is without merit. "'[T]he safeguards required by Miranda are not triggered unless a suspect is subject to "custodial interrogation"'" (People v Paulman, 5 NY3d 122, 129, quoting People v Berg, 92 NY2d 701, 704). Under the circumstances of this case, the defendant's statements made while standing on the street, in response to the inquiry of "what happened," made by the police officer responding to a 911 call, were not the product of custodial interrogation (see People v Santjer, 190 AD3d 983; People v Buchannan, 181 AD3d 615, 617). Accordingly, the defendant's pre-Miranda statements were properly admitted at trial.
Contrary to the defendant's contention, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt on all charges beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
We agree, however, with the defendant's contention that the cumulative effect of the prosecutor's improper comments during summation deprived the defendant of a fair trial. While this contention is partially unpreserved for appellate review (see CPL 470.05[2]), we nevertheless reach it in the exercise of our interest of justice jurisdiction (see id. § 470.15[6][a]).
"[S]ummation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command" (People v Ashwal, 39 NY2d 105, 109). Rather, "[i]t is fundamental that the jury must decide the issues on the evidence" (id. at 109). Thus, "in summing up to the jury, counsel must stay within the four corners of the evidence and avoid irrelevant and inflammatory comments which have a tendency to prejudice the jury against the accused" (People v Bartolomeo, 126 AD2d 375, 390 [internal quotation marks omitted]; see People v Ashwal, 39 NY2d at 109-110; People v Singh, 128 AD3d 860, 863). The prosecutor in the present case failed to comply with these fundamental principles.
The prosecutor mischaracterized the evidence relating to the charge of criminally negligent homicide and confused the jury by repeatedly using language to suggest that the [*3]defendant's conduct in striking Rodriguez with the vehicle was intentional or reckless. Specifically, the prosecutor used language such as "conscious, blameworthy choices," "knowingly commit blameworthy acts," "took a risk that took [Rodriguez's] life," "you don't get to knowingly choose to do something wrong," "[y]ou don't get to drive over someone because you feel a mother's memorial is a nuisance," and, illogically, "[s]he failed to perceive that risk, and she chose to go ahead anyway" (emphasis added).
The prosecutor continually denigrated the defense, referring to defense theories, repeatedly, as "excuses," and also as "garbage," and he falsely and provocatively claimed that the "defense repeatedly argued that the death of Kayla . . . was an inconvenience and a nuisance" (see People v Dawson, 178 AD3d 719, 721; People v Singh, 128 AD3d at 864). The prosecutor continually evoked sympathy for Rodriguez using strong emotional terms, such as referring to her, and to her and Cuevas together, numerous times, as "the grieving mother" and the "grieving parents" and referring to Kayla repeatedly as Rodriguez's "murdered daughter" or "murdered teenage daughter" (see People v Dawson, 178 AD3d at 721; People v McCray, 140 AD3d 794, 798).
Finally, in arguing that the defendant engaged in "blameworthy conduct creating or contributing to a substantial and unjustifiable risk" so as to meet the standard of criminally negligent homicide (People v Boutin, 75 NY2d 692, 696), the prosecutor, throughout the course of his summation, referred to conduct not relevant to the driving conduct that formed the basis of the criminally negligent homicide charge. Specifically, the prosecutor encouraged the jury to consider the defendant's actions in removing the memorial, which he recurrently characterized as "blameworthy," when determining whether the defendant's conduct was sufficiently blameworthy to constitute criminally negligent homicide. The prosecutor compounded the prejudicial effect of this error by repeatedly using inflammatory and emotional language, and assuming facts not in evidence, to describe the defendant's conduct of removing the memorial.
While the People argued that these improper comments did not deprive the defendant of a fair trial because there was video evidence depicting the defendant's conduct of striking Rodriguez with her vehicle, as just noted, the jury was called upon not only to determine what actions the defendant took, but also, whether such conduct was sufficiently "blameworthy" as to rise to the level of criminally negligent homicide (id. at 696; see People v Cabrera, 10 NY3d 370, 376-378). It was this determination that was prejudiced by the prosecutor's misconduct of inflaming the jury's emotions, failing to stay within the four corners of the evidence, and encouraging the jury to rely upon irrelevant facts in reaching its decision (see People v Dawson, 178 AD3d at 721).
The cumulative effect of this prosecutorial misconduct was to deprive the defendant of a fair trial, and therefore, a new trial is required (see People v Crimmins, 36 NY2d 230, 237-238; People v Dawson, 178 AD3d at 721).
In light of our determination, we need not reach the defendant's remaining contentions.
IANNACCI, J.P., MILLER, WOOTEN and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court