OPINION OF THE COURT
 

 Levine, J.
 

 In January 1987, defendant was indicted for three misdemeanor counts of failure to file a tax return (Tax Law § 1801) and one class E felony count of repeated failure to file a tax return (Tax Law § 1802), arising from his failure to file New York State personal income tax returns for the years 1983, 1984 and 1985. In August 1987, eight months after he was indicted, defendant did file the delinquent returns. Defendant was ultimately convicted on all counts. Defendant appealed his conviction and the Appellate Division affirmed (190 AD2d 767). A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 Defendant’s first point on appeal is that the Legislature did not intend Tax Law § 1802 to be applied retroactively to a repeated failure to file returns which occurred in part prior to the effective date of the statute. The fatal flaw in this argument is that the statute is not being retroactively applied here in any true sense of the term. "A statute is not retroactive * * * when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51, at 87;
 
 see, Forti v New York State Ethics Commn.,
 
 75 NY2d 596, 609-610). Defendant’s reliance on cases setting forth principles of statutory construction requiring a
 
 *266
 
 clear manifestation of legislative intent to make a new statute retroactive
 
 (see, e.g., People v Behlog,
 
 74 NY2d 237, 240;
 
 People v Oliver,
 
 1 NY2d 152, 157-158) is therefore misplaced. Section 1802 of the Tax Law is one of several provisions of the Omnibus Tax Equity and Enforcement Act of 1985 which became effective on November 1, 1985, and which were made applicable "to all offenses committed on or after such date” (L 1985, ch 65, §§ 39, 160 [a]). Here, defendant "committed” the section 1802 offense when he failed to file his 1985 tax return by April 15, 1986, having then failed to file his returns for three consecutive years. Defendant’s conduct thus falls within the plain statutory language concerning the applicability of the section, and he has pointed to no legislative history for the act in general or section 1802 in particular that would indicate otherwise. Defendant’s construction — which would necessitate a conclusion that the Legislature did not intend for section 1802 to take effect for at least three years after its enactment — is further undermined by the Legislature’s enactment of a companion bill providing for an immediate three-month, one-time-only tax amnesty period, whereby taxpayers were given the opportunity to settle their outstanding tax liabilities by paying back taxes and interest due the State (L 1985, ch 66;
 
 see,
 
 Governor’s Mem approving L 1985, ohs 65 and 66, 1985 McKinney’s Session Laws of NY, at 3276-3277). The immediate amnesty would have been meaningless as to section 1802 violations under defendant’s construction, that
 
 all
 
 nonfilings must occur after November 1, 1985.
 

 Defendant’s claim that Tax Law § 1802 as applied against him in this case constitutes an unconstitutional ex post facto law is also without merit. As explained above, defendant did not commit the repeated failure to file offense until he failed to file his 1985 return by April 15, 1986, a point in time well after section 1802’s effective date. As such, the Legislature has not punished defendant for acts previously committed that were innocent when performed, nor enhanced the punishment for a crime after its commission
 
 (see, Collins v Youngblood,
 
 497 US 37, 42). Our decision in
 
 People v Morse
 
 (62 NY2d 205,
 
 appeal dismissed sub nom. Vega v New York,
 
 469 US 1186), is instructive on this issue. In
 
 Morse,
 
 we held that application of the second violent felony offender and the persistent violent felony offender statutes did not violate the ex post facto prohibition, even where the prior crime was not classified as a violent felony offense at the time it was committed
 
 (id.,
 
 at 217-218). As in
 
 Morse,
 
 a conviction under section
 
 *267
 
 1802 " 'is not to be viewed as either a new jeopardy or additional penalty for the earlier [nonfilings]. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one’ ”
 
 (id.,
 
 at 217-218 [quoting
 
 Gryger v Burke,
 
 334 US 728, 732]).
 

 Moreover, there is plainly absent here what the Supreme Court has identified as a "critical” element to relief under the Ex Post Facto Clause, "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated”
 
 (Weaver v Graham,
 
 450 US 24, 30;
 
 see also, Miller v Florida,
 
 482 US 423, 430). Defendant, having failed to file returns for the two consecutive years of 1983 and 1984, was given fair warning by the enactment of section 1802 that his failure to file a return for 1985 would result in criminal liability for repeated failure to file under that section. We therefore conclude that defendant’s prosecution under Tax Law § 1802 does not violate the ex post facto prohibition
 
 (see, Collins v Youngblood,
 
 497 US 37,
 
 supra).
 

 We likewise reject defendant’s contention that the trial court committed error in giving supplemental instructions to the jury regarding a timeliness element in any of the offenses, i.e., that the statute is violated by a failure to file within the time required by law
 
 (see,
 
 Tax Law § 1801 [a]). Defendant does not dispute that timely filing is an element of both sections 1801 and 1802, but only that the instruction on timeliness was unrequested and unbalanced. During deliberations, the jury sent a note to the court requesting that it repeat the charge on the elements of the violations of both sections 1801 and 1802, and the court proceeded to reread the elements of both offenses to the jury. During a bench colloquy that immediately followed, the court recognized that it had failed to reiterate the timeliness element of the offenses and, before the jury retired to resume deliberations, the court reinstructed the jury regarding that element.
 

 Under CPL 310.30, when a deliberating jury requests supplementary instruction or information, the court "must give such requested information or instruction as the court deems proper”. We have held that a trial court is obliged to respond meaningfully to the jury’s inquiries
 
 (People v Almodovar,
 
 62 NY2d 126, 131;
 
 People v Malloy,
 
 55 NY2d 296, 301,
 
 cert denied
 
 459 US 847;
 
 People v Gonzalez,
 
 293 NY 259, 262), and that the court "is vested with some measure of discretion in framing
 
 *268
 
 its response and is in the best position to evaluate the jury’s request in the first instance”
 
 (People v Malloy, supra,
 
 at 302). Here, the trial court fulfilled its duty to respond meaningfully to the jury’s inquiry by correcting its prior supplementary instruction to assure that the jury was not deliberating under a misapprehension of the law. Defendant’s attempt to characterize the timeliness instruction as unrequested ignores the scope of the jury’s initial question which requested a recapitulation of all of the elements of both offenses. The inclusion of the timeliness requirement was especially pertinent to rendering a meaningful response to the jury’s inquiry here in light of the fact that defendant did ultimately file untimely returns. Defendant’s claim that the timeliness instructions were so unbalanced as to preclude the jury from properly considering the main defense theory — i.e., that defendant lacked intent to evade taxes — is unpersuasive as the court explicitly prefaced the timeliness instruction with a reiteration that the individual must intend to evade the tax.
 

 Defendant’s final argument that he should have been permitted by the trial court to present the concept of jury nullification during summation is foreclosed by our holding in
 
 People v Goetz
 
 (73 NY2d 751,
 
 cert denied
 
 489 US 1053). In
 
 Goetz,
 
 in rejecting the defendant’s argument that the trial court erred in instructing the jury that they "must” convict if the prosecution had proven its case, we explained that "[wjhile there is nothing to prevent a petit jury from acquitting although finding that the prosecution has proven its case, this so-called 'mercy-dispensing power’ * * * is not a legally sanctioned function of the jury and should not be encouraged by the court”
 
 (id.,
 
 at 752;
 
 see also, People v Mussenden,
 
 308 NY 558, 562-563). Permitting defense counsel instead to encourage the jury to abdicate its primary function would directly contravene the trial court’s authority, recognized in
 
 Goetz,
 
 to instruct the jury that they must follow and properly apply the law.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Ciparick concur; Judge Titone taking no part.
 

 Order affirmed.