(November 10, 2011)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v REBECCA POLOMAINE, Appellant-Respondent. [932 NYS2d 571]—

Malone Jr., J.

In 2007, defendant was indicted and charged with assault in the first degree, reckless assault of a child, and reckless assault of a child by a daycare provider after a two-year-old female child suffered severe injuries, including a skull fracture and permanent brain damage, while in defendant's care on March 27, 2007. Following a jury trial, defendant was found guilty as charged, although the conviction of reckless assault by a daycare provider was subsequently dismissed by County Court. Thereafter, defendant was sentenced to a prison term of 18 years, with five years of postrelease supervision. Defendant appeals.[1]

Initially, we are not persuaded by defendant's contention that the convictions are against the weight of the evidence. The conviction of assault in the first degree required proof that, "[u]nder circumstances evincing a depraved indifference to human life, [defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] serious physical injury to another person" (Penal Law § 120.10 [3]). The conviction of reckless assault of a child required proof that defendant "recklessly cause[d] serious physical injury to the brain of a child less than five years old by shaking the child, or by slamming or throwing the child so as to impact the child's head on a hard surface or object" (Penal Law § 120.02 [1]).

The evidence established that prior to March 27, 2007, the

1. Although the People filed a notice of cross appeal from County Court's dismissal of defendant's conviction of reckless assault of a child by a daycare provider, the People have not raised any challenge to the dismissal in their brief on appeal and, thus, the cross appeal is dismissed as abandoned (see Matter of Bjork v Bjork, 58 AD3d 951, 952 n [2009], lv denied 12 NY3d 708 [2009]).

child had been a healthy toddler and that her severe injuries were not the result of natural causes and did not occur before the time that she arrived at defendant's house on the day in question. According to the testimony at trial, defendant called the child's mother to tell the mother that she had put the child down for a nap, but that the child had vomited in her sleep and was making noises and defendant could not wake her up. The mother directed defendant to call 911 and the child was brought to the hospital, where it was determined that the child was near death, not breathing on her own, and immediate surgery was necessary to relieve significant swelling on her brain and remove a blood clot.

During the investigation that day, defendant denied any knowledge of any injury to the child's head, but stated that she thought that the child had not been as active as usual. During subsequent questioning, however, defendant claimed that the child had fallen, hit her head and had complained about ear pain shortly before defendant put her down for a nap. A pediatric neurosurgeon testified that the child's "life-threatening injuries" were not consistent with injuries sustained in an accidental fall; rather, they were akin to the type of injuries sustained in falls "from significant heights" or the result of "very significant forces applied to the head," such as in motor vehicle accidents. Although defendant was the only adult in the house, defendant's young children, including her four-year-old daughter, were also present that day and the medical experts were asked if, hypothetically, an average four year old could have caused the child's injuries. The child's treating pediatric neurosurgeon opined that it was very unlikely that a four year old could have caused the child's injuries, but that it was "obvious that [the child] sustained a smash of some sort to the head or she was hit onto a hard surface with severe force." He further testified that "within a very short period of time" after sustaining the head injuries, the child would have been unconscious, which indicated that the injuries had not occurred several hours before the child was found unresponsive by defendant. Although defendant's expert witness opined that it was hypothetically possible that a four-year-old child could have caused the child's injuries by running full force into her and knocking into a flat surface, he also acknowledged that defendant's statements were inconsistent with the child's injuries. Viewing this evidence in a neutral light, and according great deference to the jury's credibility assessments of the witnesses, it cannot be said that the verdict was against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Tyrell, 82 AD3d 1352, 1354 [2011], lv denied 17 NY3d 810 [2011]).

Nor are we persuaded that County Court abused its discretion by permitting the People to present evidence that, while in defendant's care, defendant's daughter previously had suffered a skull fracture and the victim in this case previously had suffered a fractured tibia. Evidence of the prior injuries to those children was admissible "to establish that [the victim's] injuries were not accidental or were caused by another individual" (*People v Engler*, 150 AD2d 827, 829 [1989], *lv denied* 75 NY2d 770 [1989]; *see People v Henson*, 33 NY2d 63, 72 [1973]; *People v Wright*, 81 AD3d 1161, 1162 [2011], *lv denied* 17 NY3d 803 [2011]), particularly considering that defendant disclaimed knowledge of what caused the child's injuries and claimed that they were accidental. The record reflects that the court appropriately weighed the probative value of such evidence against its potential prejudicial effect (*see People v Blair*, 90 NY2d 1003 [1997]) and repeatedly instructed the jury that such evidence was not permitted to be used as evidence of defendant's propensity to commit the crimes with which she was charged (*see People v Harris*, 98 NY2d 452 [2002]).

Defendant's remaining contentions do not warrant extended discussion. Her claim that she was deprived of her right to a fair trial because the People elicited testimony and made comments about the fact that she provided limited consent to the police search of her home is unpreserved for review and does not warrant reversal in the interest of justice. We are not convinced that County Court erred by providing the jury with a verdict sheet that contained statutory language considering that where, as here, "the court submits two or more counts charging a violation of the same section of a law defining an offense," the court may include such language (CPL 310.20 [2]; *see People v Rosario*, 26 AD3d 206, 207 [2006], *lv denied* 7 NY3d 762 [2006]).[2] Contrary to defendant's contention, the court neither failed to meaningfully respond to the jury's request for a read-back of a portion of one witness's testimony, nor abused its discretion by supplementing its initial response (*see generally People v Weinberg*, 83 NY2d 262, 267-268 [1994]). Defendant's claims that various rulings of the court were prejudicial and deprived her of

---

**2.** Although the verdict sheet contained four counts, defendant specifically objected only to the fact that the count pertaining to reckless assault of a child contained the words from the part of the statute stating "by shaking the child" (Penal Law § 120.02 [1]). Accordingly, to the extent that defendant now challenges the remainder of the verdict sheet, such contentions are unpreserved (*see People v Washington*, 9 AD3d 499, 500-501 [2004], *lv denied* 3 NY3d 682 [2004]), as are her contentions regarding the sufficiency of County Court's explanation to the jury regarding the purpose of the annotations (*see People v Andrews*, 267 AD2d 1071 [1999], *lv denied* 94 NY2d 916 [2000]).

a fair trial, that her counsel provided ineffective assistance and that her sentence is harsh and excessive also have been considered and found to be lacking in merit.

Rose, J.P., Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed. Ordered that the cross appeal is dismissed, as abandoned.