# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 42
The People &c.,
   Respondent,
  v.
David Mendoza,
   Appellant.

Caitlin Halpern, for appellant.
Gamaliel Marrero, for respondent.

DiFIORE, Chief Judge:

   This appeal presents the issue of whether defense counsel is ineffective for advancing a jury nullification defense at trial. Although jury nullification "is not a legally sanctioned function of the jury" (People v Goetz, 73 NY2d 751, 752 [1988]), we hold that

counsel's representation, when viewed as a whole on this record, does not constitute ineffective assistance of counsel.

On two separate occasions, defendant unlawfully entered a multi-residential apartment building and stole the contents of packages from the mailbox area in the lobby. The items stolen were dog training pads and two pairs of pants. On both occasions, defendant's identity as the thief of the property was captured with clarity on the building's surveillance video. Defendant admitted to the police that he was the thief captured twice on the surveillance video and stated to his mother, on a recorded telephone call from Rikers Island, that he had been arrested for the "package thing." By indictment, defendant was charged with two counts each of burglary in the second degree, burglary in the third degree, petit larceny, and trespass. Defendant pled not guilty and proceeded to trial.

At the outset of the trial, defense counsel declared in his opening statement that there was "no great mystery" to the case and that this was a "rock-solid" case because the crimes were captured on video. However, counsel argued that the burglary charges do not fit the facts because the evidence would show that defendant took only mail packages of pairs of pants and "doggy pee pads." Counsel also stated that defendant did not break any locks, did not enter into anyone's apartment, and did not possess any burglar's tools during the incident. He told the jury that he had been "fighting for" defendant for over a year and implored the jurors to "join that fight when [they] listen to the evidence," a comment for which a People's objection was sustained.

The People's case included the surveillance video; defendant's admissions to the police; the telephone call recording; and photographs of the premises. The two victims, residents of the dwelling, also testified. Defense counsel cross-examined each of the witnesses called by the People. The defense rested after the close of the People's case.

In summation, defense counsel again commented on the sheer strength of the evidence against his client, repeatedly stating that there was no "great mystery" to the case and that he was not asking the jury to find defendant "not guilty" of the burglary charges but only to be fair. Counsel challenged the evidence of the unlawful entry into the building. He reiterated that the facts did not fit the crime because no locks were broken, no individual apartments were damaged, and defendant was armed with a sandwich (defendant can be seen eating a sandwich during the second crime) rather than any burglar's tools. Invoking Jean Valjean of *Les Misérables* and his theft of bread, counsel argued that stealing "doggy diapers and a pair of pants" is not "the crime of the century" and thus could not be considered burglary. Counsel pressed for leniency for defendant along the following lines:

> "This case, I submit to you, ladies and gentlemen, is overcharged. We're talking about packages laid out in the open, not going to anyone's apartment, packages laid out in the open on a ledge . . . The man took doggy diapers and pants."

Counsel concluded by describing the case as an "overexaggerate[d] reality" based on the government deciding to "trump up" charges.

In response, the People emphasized the surveillance video and argued the sufficiency of the evidence presented, including that defendant had no right to be in the building, the lobby of the apartment building was a dwelling and a home to the residents,

and that defendant targeted the lobby because it was a home. The prosecutor also pointed out that neither damage to any property nor forcible entry into the building were elements of the crimes charged.

In its legal instructions, the court charged the jury "to apply the law to the facts, and in that way decide the case" and "not be governed or influenced by sympathy or prejudice for or against any party." It instructed the jury as to the elements of burglary in the second degree, including the definitions of an unlawful entry and a dwelling. The court also made clear that any crime committed during the burglary is "separate and distinct" from the crime of burglary itself. The jury returned a verdict convicting defendant of both second-degree burglary and petit larceny.

On appeal, the Appellate Division rejected defendant's claim of ineffective assistance of counsel and affirmed the conviction, holding that "defense counsel pursued a reasonable strategy and provided meaningful representation" (155 AD3d 652, 652-653 [2d Dept 2017]). A Judge of this Court granted defendant leave to appeal (31 NY3d 1084 [2018]) and we now affirm.

Defendant argues that his trial counsel was ineffective because he "deliberately conceded appellant's guilt on all counts" and exclusively pursued a jury nullification defense to the exclusion of other viable defenses. The People contend that trial counsel "provided meaningful representation by developing and consistently advancing the defense theory that, while defendant was guilty of petit larceny, the People had overcharged defendant with respect to the burglary counts."

A defendant's right to the effective assistance of counsel is guaranteed by the Federal and State Constitutions (see US Const, 6th Amend; NY Const, art I, § 6). "To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation" (People v Flores, 84 NY2d 184, 187 [1994]). "Meaningful representation" is determined by an examination of "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation" (People v Oliveras, 21 NY3d 339, 346 [2013], quoting People v Baldi, 54 NY2d 137, 147 [1981]). It is defendant's burden "to demonstrate the absence of strategic or other legitimate explanations" for alleged shortcomings (People v Rivera, 71 NY2d 705, 709 [1988]), and counsel's performance is "objectively evaluated to determine whether it was consistent with strategic decisions of a reasonably competent attorney" (People v Benevento, 91 NY2d 708, 712 [1998] [internal quotation marks and citations omitted]). In this case, we must determine whether the pursuit of a jury nullification defense, without much interference from the court or prosecutor, rises to the level of ineffective assistance of counsel.

The societal roles of both the court and the jury are not new. "Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be" (Sparf v United States, 156 US 51, 102 [1895]; see Duffy v People, 26 NY 588, 591 [1863]). "[W]hile the jury has the power to refuse to find any fact regardless of how clearly it may appear to a judge to have been proved, the jury does not, so to speak, have the right to find a fact and

then refuse to render the verdict which such a finding necessarily requires" (People v Mussenden, 308 NY 558, 563 [1955]).  However, jury nullification is "an inevitable consequence of the jury system" (id. at 562) and the system's "several features" designed "to protect the jury's power to acquit" (United States v Thomas, 116 F3d 606, 615 [2d Cir 1997]).

In People v Goetz, we held that "[t]he trial court did not err in instructing the jury that, if it found that the People had proved each of the elements of the crime beyond a reasonable doubt, it 'must' find defendant guilty" because "the jury's function is to apply the legal definition of the crime to the evidence and to convict if it is satisfied that each of the elements of the crime has been established beyond a reasonable doubt" (73 NY2d at 752).  "While there is nothing to prevent a petit jury from acquitting although finding that the prosecution has proven its case, this so-called 'mercy-dispensing power,' . . . is not a legally sanctioned function of the jury and should not be encouraged by the court" (id.).

Subsequently, in People v Weinberg, we concluded that defendant's argument that "he should have been permitted by the trial court to present the concept of jury nullification during summation is foreclosed by our holding in People v Goetz" (83 NY2d 262, 268 [1994]).  Relying on Goetz, we explained that "[p]ermitting defense counsel instead [to en]courage the jury to abdicate its primary function would directly contravene the trial court's authority, recognized [in] Goetz, to instruct the jury that they must follow and properly apply the law" (id.).

We cannot say that, on this record when viewed in totality, defendant was provided with less than meaningful representation. Here, defense counsel was eminently familiar with the facts of the case and the evidence elicited, including the details of the surveillance video and the photographic exhibits. Given the truly overwhelming evidence against his client on all the charges, and constrained by the limited legitimate defense strategies available, counsel raised what he reasonably perceived could be factual issues in the case, such as the method of defendant's entry into the building. Counsel's performance included cogent opening and closing arguments, a motion to dismiss after the People's case-in-chief, and thorough cross-examinations of the People's witnesses. Moreover, the trial court did not curb counsel's jury nullification summation arguments. As a result, the whole record of counsel's performance demonstrates that defendant has failed to sustain his burden that he was deprived of meaningful representation (see People v Sanchez, 21 NY3d 216, 224 [2013]).[*]

Accordingly, the Appellate Division order should be affirmed.

---

[*] On this record on direct appeal, we reject defendant's ineffectiveness challenge to his trial counsel's defense strategy. However, a claim of ineffective assistance of counsel based on allegedly deficient trial strategy often is raised by a collateral or postconviction proceeding under CPL 440.10 (see People v Brown, 45 NY2d 852, 853-854 [1978]), and defendant is not precluded from commencing a proceeding "based on matters outside the [current] record and beyond review on this appeal" (People v Henderson, 28 NY3d 63, 66 [2016]).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Chief Judge DiFiore.  Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.


Decided June 13, 2019

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*