People v Stowe (2025 NY Slip Op 04053)

People v Stowe

2025 NY Slip Op 04053

Decided on July 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

113269
[*1]The People of the State of New York, Respondent,
v
Joseph P. Stowe, Appellant.

Calendar Date:May 28, 2025

Before:Aarons, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Rosenberg Law Firm, Brooklyn (Jonathan Rosenberg of counsel), for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.

Powers, J.
Appeal from a judgment of the County Court of Chemung County (Richard Rich Jr., J.), rendered August 30, 2021, upon a verdict convicting defendant of the crime of reckless assault of a child.
Defendant was caring for the victim, a one-month-old infant, during the overnight hours between December 17 and December 18, 2018. When the victim's mother returned from work at around 7 a.m. on December 18, she noticed that the victim refused to take a bottle, was cold and shaking, had purple ringlets around his eyes and red dots on his lips. Several hours later, the victim still would not eat and became quiet and still. The victim's condition failed to improve throughout the day and, at around 7:30 p.m., he was taken to the hospital. At the hospital, the victim was intubated, and further testing revealed that he had several areas of bleeding and swelling in the brain, a bruise above his right eye and a subconjunctival hemorrhage in his left eye. Due to the nature of these injuries, several medical professionals suspected that the victim suffered from nonaccidental trauma, which prompted a police investigation. In April 2019, as a result of that investigation, defendant was charged by indictment with reckless assault of a child and, following a jury trial, was convicted as charged. Defendant was thereafter sentenced to a prison term of seven years, to be followed by three years of postrelease supervision. Defendant appeals.
Initially, we are not persuaded by defendant's contention that the conviction is against the weight of the evidence because the People's evidence failed to connect his conduct to the victim's injuries. In reviewing defendant's weight of the evidence challenge, "we must first view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of the evidence supports the verdict" (People v Oates, 222 AD3d 1271, 1272 [3d Dept 2023]; see People v Munise, 222 AD3d 1183, 1184 [3d Dept 2023]; People v Alger, 206 AD3d 1049, 1050-1051 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]). "[G]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Contompasis, 236 AD3d 138, 141 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [May 29, 2025]).
As relevant here, "[a] person is guilty of reckless assault of a child when, being [18] years of age or more, such person recklessly causes serious physical injury to the brain of a child less than five years old by shaking the child, or by slamming or throwing the child so as to impact the child's head on a hard surface or object" (Penal Law § 120.02 [1]). In this context, "serious physical injury" is defined in two ways [*2]statutorily. It can mean "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]; see Penal Law § 120.02 [2] [a]). Or, alternatively, it can mean "extreme rotational cranial acceleration and deceleration and one or more of the following: (i) subdural hemorrhaging; (ii) intracranial hemorrhaging; or (iii) retinal hemorrhaging" (Penal Law § 120.02 [2] [b]).
The evidence established that the victim was healthy when he was born, and he was "perfectly fine" until the night he was left alone with defendant. During his time alone with the victim, defendant sent the victim's mother a text message saying that the victim was "bugging." A little over an hour later, defendant sent her another text message informing her that "[h]e's not going to sleep." In these messages, defendant indicated that he ran out of baby formula and told her that the victim was "going cray" after not having eaten in six hours. When the victim's mother returned, she noticed "purple ringlets around [the victim's] eyes, he had little red dots all over his lips and . . . one of his legs [was] shaking." The victim also felt cold to the touch. She brought the victim to the hospital, where he was intubated due to his inability to breathe properly on his own.
The People also presented testimony from, in relevant part, a neonatologist, a pediatric neurologist and a child abuse pediatrician, who each opined that the victim's condition was the result of nonaccidental trauma — i.e., child abuse. The victim presented with lethargy, a bruise above his eye, a hemorrhage in his eye and, eventually, seizure activity. Further observation revealed some retinal hemorrhaging in the back of the victim's eye. Imaging of the victim's brain illustrated subarachnoid hemorrhaging, subdural hemorrhaging, "multiple areas of blood . . . all around the brain" and hypoxic ischemic encephalopathy, which was described as indicative of his brain being deprived of oxygen or blood flow. Ultimately, the pediatric neurologist specifically opined that the victim likely suffered from an "acceleration and deceleration injury," and the child abuse pediatrician concurred that the victim was likely shaken.
Defendant called his own pediatric neurologist, who indicated that he was within 5% of physicians who do not believe there is scientific evidence that "confirms that there is any significant amount of acceleration/deceleration when somebody violently shakes a baby." He opined that the victim suffered from multiple venous strokes, a medical condition that occurs in six out of every one million children and is even more rare in newborns, like the victim.
Given the absence of neck injuries, skull fractures and broken ribs, as well as defendant's pediatric neurologist's alternative diagnosis, a contrary verdict would not have been unreasonable[*3]. However, when viewing the evidence in a neutral light and deferring to the jury's credibility determinations, the verdict is not against the weight of the evidence (see People v Keegan, 133 AD3d 1313, 1316 [4th Dept 2015], lv denied 27 NY3d 1152 [2016]; People v Polomaine, 89 AD3d 1215, 1216 [3d Dept 2011], lv denied 18 NY3d 927 [2012]; compare People v Groth, 71 AD3d 1391, 1392 [4th Dept 2010]). Indeed, the People presented medical opinions of three qualified physicians who opined that it was extremely unlikely that the victim's injuries were the result of anything other than nonaccidental trauma — i.e., shaking — and that the victim was otherwise healthy until he was alone with defendant. On the other hand, the evidence that defendant presented to rebut the People's theory was a medical opinion that was admittedly only supported by 5% of physicians and contemplated an exceedingly rare medical condition. While we are mindful of the circumstantial nature of the evidence in this case, we are satisfied that the jury's "inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (People v Baque, 43 NY3d 26, 30 [2024] [internal quotation marks and citation omitted]; accord People v Williams, ___ AD3d ___, ___, 2025 NY Slip Op 03605, *4 [3d Dept 2025]).
Next, defendant challenges County Court's jury charge, alleging that it impermissibly expanded the People's theory as alleged in the indictment. Although defendant failed to preserve this argument by objecting to the court's instruction (see People v Keegan, 133 AD3d at 1315), "preservation is not required, inasmuch as defendant has a fundamental and nonwaivable right to be tried only on the crimes charged, as limited by either the bill of particulars or the indictment itself" (People v Graves, 136 AD3d 1347, 1348 [4th Dept 2016] [internal quotation marks and citations omitted], lv denied 27 NY3d 1069 [2016]; see People v Jasiewicz, 162 AD3d 1398, 1401 [3d Dept 2018], lv denied 32 NY3d 1005 [2018]). That said, we disagree with defendant. As outlined in more detail above, "serious physical injury" has two definitions (see Penal Law §§ 10.00 [10]; 120.02). We are satisfied that, in using broad language in both the indictment and bill of particulars, the People did not limit their theory to one of those definitions and the court properly instructed the jury on both (see People v Myers, 194 AD3d 1426, 1427 [4th Dept 2021], lv denied 37 NY3d 967 [2021]; People v Jasiewicz, 162 AD3d at 1401; People v Sanford, 148 AD3d 1580, 1582 [4th Dept 2017], lv denied 29 NY3d 1133 [2017]; compare People v Reid, 212 AD3d 845, 848 [2d Dept 2023]).
By failing to render an objection at sentencing, defendant's claim that County Court erred in permitting multiple victim impact statements is unpreserved for review (see People v Caufield, 236 AD3d 1180, 1181 [3d Dept 2025]). Nevertheless, the court [*4]did not abuse its discretion in allowing these four individuals — the victim's mother as well as the victim's current and former foster parents — to describe the indelible impact to the victim and, furthermore, these statements "were [not] so inflammatory or unduly prejudicial so as to render the sentence flawed" (id.; see People v Hemmings, 2 NY3d 1, 6-7 [2004]; People v Hodgins, 202 AD3d 1377, 1382 [3d Dept 2022]).
Finally, the sentence imposed was neither unduly harsh nor severe and we decline defendant's request to modify it in the interest of justice (see CPL 470.15 [3] [c]; [6] [b]). Despite defendant's minimal criminal history, given the extensive, life-long medical complications and diminished quality of life that the victim will endure as a result of defendant's actions, we see no reason to disturb County Court's imposition of the maximum permissible period of incarceration (see People v Hussain, 234 AD3d 23, 33-34 [3d Dept 2024], lv denied 43 NY3d 963 [2025]; People v Moore, 112 AD3d 981, 983 [3d Dept 2013]; see also People v Smalls, 191 AD3d 1258, 1260 [4th Dept 2021], lv denied 36 NY3d 1124 [2021]; People v Finch, 180 AD3d 1362, 1364 [4th Dept 2020], lv denied 35 NY3d 993 [2020]).
Aarons, J.P., Lynch, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed.