People v Guerra (2024 NY Slip Op 04978)

People v Guerra

2024 NY Slip Op 04978

Decided on October 9, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 9, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ROBERT J. MILLER
DEBORAH A. DOWLING
HELEN VOUTSINAS
LILLIAN WAN, JJ.

2019-11901
 (Ind. No. 1815/17)

[*1]The People of the State of New York, respondent, 
v
Diego Guerra, appellant. Patricia Pazner, New York, NY (Hannah Kon of counsel), for appellant.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Ellen C. Abbot, and Joseph M. DiPietro of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered October 3, 2019, convicting him of promoting a sexual performance by a child (19 counts) and possessing a sexual performance by a child (49 counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
The defendant's contention that the evidence was legally insufficient to establish his guilt is partially unpreserved for appellate review (see CPL 470.05[2]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
We are nevertheless compelled to reverse the judgment of conviction because the defendant's trial counsel (hereinafter defense counsel) was ineffective in signing, and permitting the jury to consider, a stipulation containing definitions of the crimes charged that eliminated the requisite mens rea element.
Under the federal standard for ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness, and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (People v Bodden, 82 AD3d 781, 783, quoting Strickland v Washington, 466 US 668, 694; see People v Tindley, 202 AD3d 838, 838-839). Under the New York standard, a court must examine whether "'the evidence, the law, and the circumstances of a particular case, [*2]viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation'" (People v Oliveras, 21 NY3d 339, 346, quoting People v Baldi, 54 NY2d 137, 147; see People v Benevento, 91 NY2d 708, 712; People v Parvez, 209 AD3d 885, 886-887). When reviewing claims of ineffective assistance, courts should take care to avoid "confusing true ineffectiveness with mere losing tactics" and "according undue significance to retrospective analysis" (People v Baldi, 54 NY2d at 146; see People v Goondall, 173 AD3d 896, 898). Although "[i]solated errors in counsel's representation generally will not rise to the level of ineffectiveness" (People v Henry, 95 NY2d 563, 565-566), a single, egregious error by counsel may deprive a defendant of the right to effective assistance (see People v Turner, 5 NY3d 476, 480-481; People v Henry, 95 NY2d at 566; People v Calderon, 66 AD3d 314, 320).
Here, the defendant proceeded to trial on various counts of two crimes, promoting a sexual performance by a child and possessing a sexual performance by a child, all of which stemmed from videos and images affiliated with the defendant's laptop computer (hereinafter the laptop). "A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than [17] years of age" (Penal Law § 263.15 [emphasis added]). "A person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than [16] years of age" (id. § 263.16 [emphasis added]).
A few days before the trial commenced, defense counsel and the prosecutor executed a stipulation entitled "Stipulation Elements of Crime." Among other things, they stipulated to the fact that certain videos underlying the counts of promoting a sexual performance by a child "depicted . . . a performance, which included sexual conduct by a child less than 17 years of age," and similarly stipulated as to the content of certain images underlying the counts of possessing a sexual performance by a child. We share the view of our colleagues in the dissent that these factual stipulations were intended to shield the jury from viewing the child sexual abuse perpetrated in the videos and images.
However, the stipulation went on to state, in pertinent part, that "whoever possessed each of the . . . videos, promoted a performance, which included sexual conduct by a child . . . with knowledge of the character and content of the videos," and "whoever possessed these videos and images, knowingly had in his or her possession or control, or knowingly accessed with intent to view, a performance which included sexual conduct by a child" (emphasis added). A reasonable reading of this additional language in the stipulation is that possession alone is tantamount to promoting a performance with knowledge "of the character and content of" the videos, which is required to support a conviction of promoting a sexual performance by a child under Penal Law § 263.15, and that possession alone is tantamount to knowing "possession or control" or "access[ ] with intent to view," which is required to support a conviction of possessing a sexual performance by a child under Penal Law § 263.16. Thus, this additional language in the stipulation set forth definitions of the crimes that had no mens rea element (cf. id. § 263.15, 263.16), under which possession alone could support a guilty verdict for each crime.
In its initial instructions to the jury, the Supreme Court correctly charged the jury as to the crimes—i.e., the court's charge correctly included the mens rea element for each crime consistent with the definitions in the Penal Law. Among the contentions made by defense counsel in her opening statement was that, although a detective found the laptop "in the room" that the defendant rented, the laptop was not "passcode protected," and it was out in the open in a single-family house that had been partitioned into 11 bedrooms. Thus, defense counsel presented a theory that other individuals had access to the laptop, and other individuals may have been responsible for promoting the offending videos and images or causing them to be located on the laptop. Contrary to the suggestion of our dissenting colleagues, the defense theory in this case was not limited solely to the notion that the defendant did not possess the offending videos and images. The record reflects that the defendant's knowing possession of the videos and images was disputed at trial, and the [*3]defense theory included a lack of "knowing" possession or control (id. § 263.16).
At the close of the People's case, the Supreme Court confirmed that the stipulation was in evidence and discussed the stipulation for several minutes. At this time, defense counsel affirmatively indicated that she had no objection to the court reading the stipulation to the jury. After the jury returned to the courtroom, the court read the entire stipulation into the record and asked whether "both sides agree[d] to those stipulations." Defense counsel did not object.
Defense counsel called one witness, an expert in digital forensics analysis, who testified that the laptop was not passcode protected and, if an external device, such as a flash drive, containing images was connected to the laptop, "thumbnail images" would automatically be created in "internal records of" the laptop. During summation, defense counsel referenced the stipulation, which contained the language eliminating the mens rea element for each crime, and proceeded to contend that many people lived in the defendant's house. Thus, defense counsel invited the jury to consider that someone else may have used the laptop to retrieve or share the videos and images.
During deliberations, the jury requested a copy of the stipulation. At this point, defense counsel objected to the jury being provided with a copy of the stipulation and asked that the Supreme Court modify the language in the stipulation. In opposition, the People contended that the stipulation had been thoroughly discussed and agreed upon. The court denied defense counsel's application, noting that the parties had agreed to the stipulation and placed it into evidence, and provided the jury with a copy of the stipulation. Thereafter, the jury sent a note asking if it was "bound by the parties['] stipulation." Defense counsel requested that the court either modify the stipulation or give the jury an appropriate instruction advising them of the required mens rea element of the charged crimes. Defense counsel contended, in part, "can we all agree that I certainly did not sign a stipulation with a strict liability that if you found [the defendant] owned the [laptop] that he knew the images were there and that they [depicted child sexual abuse], because if that's the interpretation, I am duty bound to ask for a mistrial based on ineffective assistance of counsel." The court denied the motion for a mistrial. Thereafter, the jury found the defendant guilty of 19 counts of promoting a sexual performance by a child and 49 counts of possessing a sexual performance by a child.
This record, including defense counsel's remarks, reflects that defense counsel's error in signing a stipulation that included incorrect and prejudicial definitions of the crimes charged was not part of any legal strategy or tactic. Significantly, the stipulation's elimination of the requisite mens rea element undermined the defense theory that, although the defendant undisputedly owned the laptop, someone else in his high-occupancy house may have been responsible for the videos or images being placed on the laptop or being trafficked using the laptop.
Defense counsel's error in signing the stipulation was compounded by her failure to object to its admission into evidence and its presentation to the jury at the close of the People's case. The error was further compounded by defense counsel's failure to object to the disputed language in the stipulation until after the jury began its deliberations. These related errors left the jury on its own to choose between conflicting definitions of the crimes—one set that included the requisite mens rea element and one set that did not (cf. People v Lourido, 70 NY2d 428, 435; People v Byas, 172 AD2d 242, 243). The detrimental impact on the jury and the prejudice to the defendant were made worse by the fact that the incorrect definitions, which vitiated the requisite mens rea element, were placed before the jury in a legal document signed by the defendant's own attorney. Although our dissenting colleagues emphasize that the full jury note asked two questions—whether the jury was "bound by the parties['] stipulation and procurement is the[ ] same as promoting"—this merely reflects that the jury was confused about both the stipulation's impact on the required mens rea element and about a separate element of the crime of promoting a sexual performance by a child. Therefore, even if this series of related errors regarding the stipulation is considered an "isolated" error (People v Henry, 95 NY2d at 565), it was sufficiently egregious to deprive the defendant of his constitutional right to the effective assistance of counsel and, thus, he is entitled to a new trial (see People v Turner, 5 NY3d at 480-481; People v Goondall, 173 AD3d at 899).
Defense counsel's error in entering into the stipulation was further compounded by the Supreme Court's erroneous refusal to provide the jury with a clarifying instruction that its earlier legal instructions, which included the mens rea element of knowing possession, were controlling. In response to the jury's note inquiring as to whether the jury was "bound by the parties['] stipulation," defense counsel requested that the court clarify for the jury that its legal instructions on the elements of the charged crimes were controlling. The court refused to provide such a clarification and, instead, gave the jury a confusing instruction that "[a] stipulation is an agreement between the two parties that a certain fact is not an issue" and that "[t]he parties have agreed and stipulated to what you've read and seen." The court's response was not meaningful (see People v O'Rama, 78 NY2d 270, 276), as it improperly left the jury with the impression they were bound by the erroneous recitation of the elements of the charged offenses set forth in the stipulation, which eliminated the requisite element of knowledge. The court should have explained that its instructions on the elements of the crimes were controlling and clarified that possession alone was insufficient to support a guilty verdict for either promoting a sexual performance by a child or possessing a sexual performance by a child. Since this error bore on an element of the crimes charged, the defendant was clearly prejudiced by it (see People v Manzano, 202 AD3d 994; see also People v Lourido, 70 NY2d at 435).
Since there must be a new trial, we note that the prosecutor engaged in improper conduct during summation (see People v Vera, 222 AD3d 1003, 1006). "[S]ummation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command. There are certain well-defined limits" (People v Ashwal, 39 NY2d 105, 109; see People v Drago, 207 AD3d 559, 561). Here, during the People's summation, the prosecutor said to the jury, in pertinent part, "the defendant . . . never emphatically denied that he didn't have [the videos and images]. He never, like, when . . . [a detective is] telling him, well, I found it on your cell phone, he never said no, no, no, no, no, it's not there, it can't be there, there is no way I would have it there, you know? . . . [w]hat else did the defendant not tell you? There were a lot of things he did not admit." These remarks improperly "convey[ed] to the jury the impression that the defendant knew he was guilty or he would have explained his actions" (People v Kent, 125 AD2d 590, 591; see People v McArthur, 101 AD3d 752, 753; People v Bailey, 159 AD2d 628, 629), and the prejudicial effect of these improper remarks was not cured by a corrective instruction to the jury (see People v Torres, 223 AD2d 741, 742).
In light of our determination, we need not address the defendant's remaining contention.
MILLER, VOUTSINAS and WAN, JJ., concur.
BRATHWAITE NELSON, J.P., dissents, and votes to affirm the judgment, with the following memorandum, in which DOWLING, J., concurs:
I agree that the evidence was legally sufficient to establish the defendant's guilt of all counts beyond a reasonable doubt and that the verdict of guilt was not against the weight of the credible evidence. My colleagues in the panel majority, however, confuse a stipulation of facts by the parties with the Supreme Court's instruction of the law to the jury. The jury was not presented with conflicting instructions on the law. The court accurately instructed the jury on the elements of the crimes charged and accurately instructed the jury that a stipulation is an agreement between the parties that a certain fact is not an issue in the trial. Therefore, I cannot agree with the panel majority that the court erred in its instruction to the jury. Furthermore, the record shows that defense counsel's decision to stipulate to certain facts, including that whoever possessed the subject images knew the character and content of the images and knowingly had them in his or her possession, was part of a failed trial strategy that focused on whether the defendant was the person who had possessed the images. Pursuant to the evidence submitted at trial and the court's proper instruction to the jury, mere possession of the laptop was not enough to establish possession. The jury was required to infer from the circumstantial evidence that the defendant had used the laptop as a conduit to store the images on an external USB drive. The defense theory was that the defendant had never possessed the images and that he had come into possession of the laptop well after it had been used [*4]to download and share the images depicting child sexual abuse. Thus, knowledge of the nature of the images was not a disputed fact, and defense counsel's stipulation to such facts was not "true ineffectiveness" (People v Baldi, 54 NY2d 137, 146). I therefore respectfully dissent and would affirm the judgment.
A detective in the Special Crimes Task Force focusing on child exploitation cases testified that in January 2017, he conducted a search of the Ares network, an online peer-to-peer sharing platform. The detective found and was able to download 19 videos depicting child sexual abuse that were being shared onto the network from a particular IP address in Queens. The videos depicted children ages 3 to 12, naked and holding or being penetrated by adult penises.
Six months later, on July 27, 2017, police officers executed a search warrant at a house associated with the IP address, which was a three-family house with a basement and two upper stories. The house had been divided into 11 bedrooms, rented to tenants, and had shared kitchens and bathrooms. Among other devices, officers seized a laptop in a second-floor bedroom that was rented by the defendant and a roommate. The roommate identified the laptop as belonging to the defendant.
Upon a digital forensic examination of the laptop, no images or videos of child sexual abuse were found. However, there were indications or artifacts that an Ares program had been used on the laptop with the username from which the 19 videos had been downloaded. More specifically, there was an indication that an external USB drive had been attached to the laptop, using the laptop as a conduit to connect to the Ares network, and that images received from the Ares program were stored on the USB drive. Upon further forensic examination, more than 30 images depicting child sexual abuse were found in the deleted or unallocated space on the laptop. The images showed female children between the ages of two and nine, many naked and holding or being penetrated by penises. These images had been viewable on the laptop in the past but at the time of the search, they could only be viewed using forensic software. No USB drive was recovered from the defendant's bedroom. Pictures of the defendant and documents containing the defendant's resume were found on the desktop of the laptop.
The defendant, who was not home at the time of the police officers' search of the house, was later interviewed by detectives. The defendant told the detectives that he fixes computers and had found the laptop two to three months earlier in the garbage outside of the house where he lived. The laptop was already connected to the Wi-Fi of the house, which caused the defendant to believe that it had belonged to someone who had lived there and moved away. The defendant denied ever having used the Ares program and denied having the password to the Wi-Fi of the house. He told the detectives that he used the laptop to listen to music with the other residents of the house.
The defendant was charged with 19 counts of promoting a sexual performance by a child and 49 counts of possessing a sexual performance by a child, among other things. In her opening statement, defense counsel told the jury that the evidence would show that the defendant acquired the laptop in May or early June, several months after the videos allegedly were shared on the Ares network, that the images on the laptop existed in hidden space on the laptop, that no images were found on the laptop itself, and that the police officers searched the defendant's bedroom and his other electronic devices and found no other evidence connecting the defendant to the images or videos. Defense counsel further told the jury that the evidence would show that the laptop was not passcode protected, that the laptop had users other than the defendant and was kept in the open, that 24 other people lived at the house in January 2017, and that there were common spaces for the people who lived there to meet and hang out. Defense counsel presented the testimony of an expert in digital forensics analysis, who testified that the laptop was not passcode protected.
The parties stipulated to certain facts, including that each of the 19 videos that was downloaded in January 2017, depicted and promoted a performance, which included sexual conduct by a child less than 17 years of age, and that whoever possessed the videos promoted such a performance with the knowledge of the character and content of such videos. The parties also stipulated that whoever possessed the videos and images knowingly had in his or her possession or [*5]control, or knowingly accessed with intent to view, a performance, which included sexual conduct by a child less than 16 years of age.
At the close of the People's case, defense counsel moved to dismiss all counts, contending that the central issue in the case was identity and that the People had failed to establish that the defendant was the person who shared the videos on the Ares network in January 2017, as the People's evidence established that the defendant came into possession of the laptop several months later. Defense counsel renewed the motion at the close of the evidence, contending again that identity was the key issue in the case, that approximately 24 people lived in the house, and that no evidence had been presented establishing that the defendant was the exclusive owner or user of the laptop in January 2017, or establishing when the images were deleted and came into the unallocated space on the laptop. Defense counsel contended that there was an absence of direct evidence and that to be legally sufficient, the circumstantial evidence would need, at a minimum, to establish when the images came into the unallocated space on the laptop and that the defendant was in exclusive possession of the laptop at that time, but no such evidence had been presented. Defense counsel further contended that at the time that the police officers conducted the search, 20 devices were seized, but the laptop was the only one that was analyzed. The People responded that it was their position that the defendant had been untruthful in his statements to the detectives and that he had been in exclusive possession of the laptop since August 2016, and kept it locked in his room. The defendant's motions were denied.
In summation, defense counsel adhered to the defense theory of the case that the defendant did not possess the laptop at the relevant time with regard to the videos and that no images were actually found on the laptop. Defense counsel contended that the evidence established that the defendant did not come into possession of the laptop until several months after the videos were shared, that it was undisputed that the Ares program was not installed on the laptop, but was on a USB drive not in the defendant's possession, that no images were found on the laptop, and that only some artifacts indicating that the laptop had been used as a conduit for the USB drive to connect to the Ares network. Defense counsel further contended that the police officers failed to conduct a forensic analysis of the other devices found in the house belonging to the other residents and did not search the other rooms in the house for a USB drive, which was the critical piece of evidence in the case. With respect to the images that were found in the unallocated space of the laptop, defense counsel argued that they existed in a thumbnail cache only and were accessed at a time when a USB drive was connected to the laptop. Defense counsel contended that a person could knowingly possess the images only by using a USB device because they did not exist on the laptop, and there was an eight-year span in which the subject 30 images could have been created in the unallocated space. Defense counsel further contended that there was no evidence that the laptop was the device that was used to share the 19 videos in January 2017, and in the absence of a USB device, it was pure speculation that this laptop was the conduit used at that time.
The Supreme Court charged the jury consistent with the Penal Law that "a person is guilty of promoting a sexual performance by a child when knowing the character and content thereof he produces, directs, [or] promotes any performance which includes sexual conduct by a child less than 17 years of age" (see Penal Law § 263.15), and that promote means to procure, give, provide, lend, transfer, or distribute, among other possibilities (see Penal Law § 263.00[5]). The court instructed the jury that in order to find the defendant guilty, it would need to find that the People had proven beyond a reasonable doubt that the defendant produced, directed, or promoted such a performance and that he knew the character and the content of such performance.
The Supreme Court also instructed the jury consistent with the Penal Law that "a person is guilty of possessing a sexual performance by a child when knowing the character and the content, he knowingly has in his possession or control or knowingly accesses with the intent to view any performance which includes sexual conduct by a child less than 16 years of age" (see Penal Law § 263.16). The court further instructed the jury that "[i]mages stored in cache of the computer may constitute evidence of images that were previously viewed, however, viewing computer images of a sexual performance of a child on a computer does not by itself constitute possession or control of such images. Rather, such affirmative acts such as printing, saving, downloading or the like is [*6]required to show [that] the defendant, in fact, exercised dominion or control over images on his screen."
During deliberations, the jury asked for a copy of the parties' stipulation. At that time, defense counsel, among other things, asked for "curative action" to alter the parties' stipulation of the facts with respect to possessing a sexual performance by a child so that the stipulation would read that "whoever knowingly possessed the videos and images knowingly had them in his possession and control" (emphasis added). The People opposed the application on the ground that the stipulation had been thoroughly discussed and reflected the parties' agreement regarding the facts. The Supreme Court denied the application, noting that the written stipulation had been worked out, signed, and placed into evidence, and the court would not alter the evidence when the jury was asking to see it.
The jury sent a subsequent note asking whether they were "bound by the parties['] stipulation and procurement is the[ ] same as promoting." Defense counsel contended that the jury was confused on the element on knowing possession and again sought to alter the parties' stipulation and sought a mistrial when the application was denied. The Supreme Court instructed the jury that "[a] stipulation is an agreement between the two parties that a certain fact is not an issue. The parties have agreed and stipulated to what you've read and seen." The court then repeated the definition of promoting a sexual performance by a child, which was consistent with the Penal Law. The jury convicted the defendant of 19 counts of promoting a sexual performance by a child and 49 counts of possessing a sexual performance by a child.
Contrary to the conclusion of the panel majority, the jury was not presented with contradictory instructions on the essential elements of the crimes charged. The suggestion that the parties' stipulation was an instruction on the law is incorrect. The Supreme Court correctly instructed the jury that the stipulation was merely an agreement between the parties that a certain fact was not at issue. "[A] stipulation is an agreement, admission, or concession made in a judicial proceeding by the parties thereto or their attorneys, in respect of some matter incident to the proceeding, for the purpose, ordinarily, of avoiding delay, trouble and expense" (People v White, 73 NY2d 468, 476 [alteration and internal quotation marks omitted]). It is solely the court's function to instruct the jury on the law (see CPL 300.10[2]). "A stipulation does not remove an element of a crime from a statute[, and] every element has to be charged and submitted to the jury" (People v Hills, 140 AD2d 71, 79).
Here, it is not disputed that the Supreme Court's charge to the jury correctly conveyed the elements of the crimes charged. As repeatedly contended by defense counsel during trial, the crux of the case was the identity of the person who shared the 19 videos onto the Ares network from the IP address in January 2017, and, whether the same or different person, the identity of the person who possessed the USB drive that held the Ares program and the files that were captured in cache in the unallocated space on the laptop at some unidentified time prior to the July 2017 seizure of the laptop. In order to narrow the focus of the trial, the parties stipulated to the content of the 19 video images and the 30 cached images and stipulated to the facts that, in this case, whoever possessed the videos promoted them with knowledge of their character and content and whoever possessed the videos and images knowingly did so with the intent to view them. To the extent that the defendant contends that the court should have allowed him to reopen the case during jury deliberations so as to allow him to stipulate to a different set of facts, this contention is without merit (see People v Ford, 219 AD3d 501; People v McCloud, 305 AD2d 428).
Moreover, notwithstanding defense counsel's doubts expressed during jury deliberations, the parties' stipulation to certain facts did not allow the jury to find that whoever possessed the laptop knowingly possessed the videos and images. As contended by defense counsel to the jury, the 19 videos that were uploaded from an Ares account at the IP address in January 2017 were not found on the laptop, nor was any direct evidence presented connecting the username from which the videos were shared to the laptop. In order to find the defendant guilty of the counts of promoting a sexual performance by a child, the jury had to infer from the circumstantial evidence that the defendant was the person who shared the videos on the Ares network from the specific [*7]username in January 2017. There was no factual scenario presented to the jury in which the defendant's guilt of those counts was established merely by possessing the laptop.
Similarly, because the videos were not on the laptop when it was seized in July 2017, the defendant's guilt of the 19 counts of possessing a sexual performance by a child relating to those videos could not have turned on his mere possession of the laptop. As to the remaining 30 counts of possessing a sexual performance by a child, which were predicated on the cached images in the unallocated space of the laptop, the Supreme Court instructed the jury that the mere existence of those images on a computer did not constitute possession within the meaning of the law and that even viewing the images on the laptop would not constitute possession or control of such images. Rather, as the court instructed, the jury was required to find that the defendant engaged in an affirmative act "such as printing, saving, downloading or the like." "A jury is assumed to follow the instruction of the court" (People v Stone, 29 NY3d 166, 171). Thus, contrary to the conclusion of the panel majority, notwithstanding defense counsel's stipulation to the fact that whoever possessed the images did so knowing their character and content, the mere possession of the laptop, even with the cached images thereon, did not establish guilt of possessing a sexual performance by a child.
The panel majority's speculation that the jury was confused on the element of knowledge is not supported by the record. The full jury note asked whether the jury was "bound by the parties['] stipulation and procurement is the[ ] same as promoting." The jury question related to the element of "promoting" with respect to the counts of promoting a sexual performance by a child, not "possession" with respect to the counts of possessing a sexual performance by a child. In response to the jury's note, the Supreme Court properly clarified that a stipulation is an agreement relating to the facts, and the court correctly instructed the jury on the element of "promoting" with respect to the 19 counts of promoting a sexual performance by a child. The jury expressed no confusion thereafter and did not seek any instruction with respect to knowing possession. Contrary to the conclusion of the panel majority, I find no error in the court's charge to the jury.
The defendant's contention that he was deprived of the effective assistance of counsel is also without merit. In order to establish an ineffective assistance of counsel claim under the Sixth Amendment to the United States Constitution, a defendant must demonstrate that trial counsel "committed errors so egregious that he or she did not function as counsel within the meaning of the United States Constitution," and that the deficient performance "actually prejudiced the defendant" (People v Gross, 26 NY3d 689, 693; see Strickland v Washington, 466 US 668, 688, 694). "New York's constitutional requirement of effective assistance of counsel is met when 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation'" (People v Gross, 26 NY3d at 693, quoting People v Benevento, 91 NY2d 708, 712). "Under both standards, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy'" (People v Honghirun, 29 NY3d 284, 289, quoting Strickland v Washington, 466 US at 689 [internal quotation marks omitted]). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way" (Strickland v Washington, 466 US at 689). The court "must be careful not to second-guess counsel, or assess counsel's performance with the clarity of hindsight, effectively substituting its own judgment of the best approach to a given case" (People v Nicholson, 26 NY3d 813, 831 [internal quotation marks omitted]; see People v Benevento, 91 NY2d at 712). "[M]ere losing tactics" should not be confused with "true ineffectiveness" (People v Baldi, 54 NY2d at 146; see People v Benevento, 91 NY2d at 712). "The test is reasonable competence, not perfect representation" (People v Nicholson, 26 NY3d at 831 [internal quotation marks omitted]; see People v Honghirun, 29 NY3d at 291).
Here, the defendant failed to establish that he was denied the effective assistance of counsel by defense counsel's entering into the stipulation. Notably, by stipulating to the content of the 19 videos and 30 images, defense counsel intended to shield the jury from hearing the details of the child sexual abuse perpetrated in each video and image. In addition, the record plainly demonstrates that the theory of the defense was that the defendant never possessed any of the videos or the images, not that he possessed them without knowing the nature of their content. Since none [*8]of the videos was found on the laptop and the images existed only in the unallocated space, which, pursuant to the Supreme Court's instruction to the jury, was insufficient to establish possession within the meaning of the Penal Law, defense counsel's strategy was reasonable. Defense counsel's stipulation to the facts that whoever possessed the 19 videos promoted a performance with knowledge of the character and content of the videos and that whoever possessed the videos and images knowingly had in his or her possession a performance which included sexual conduct by a child less than 16 years of age, was consistent with the defense theory that the defendant never possessed the videos or images. In light of the evidence presented at trial and the court's instruction to the jury regarding possession, the defense strategy was reasonable and "counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Benevento, 91 NY2d at 712; see People v Honghirun, 29 NY3d at 290).
The defendant contends that he was deprived of a fair trial as a result of certain remarks made by the prosecutor during summation. The challenged remarks either constituted fair comment on the evidence and the reasonable inferences to be drawn therefrom or were not so flagrant or pervasive as to have deprived the defendant of a fair trial (see People v Green, 223 AD3d 914, 915; People v Ingrassia, 207 AD3d 751, 752). Moreover, the evidence of the defendant's guilt was overwhelming, and there is no significant probability that any improper remarks made by the prosecutor during summation contributed to the defendant's convictions (see People v Crimmins, 36 NY2d 230, 241-242; People v Green, 223 AD3d at 915).
The defendant's remaining contention is without merit. I therefore respectfully dissent and would affirm the judgment of conviction.
ENTER:
Darrell M. Joseph
Clerk of the Court